UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| LINCOLN LIFE ASSURANCE COMPANY OF BOSTON f/k/a LIBERTY LIFE ASSURANCE COMPANY OF BOSTON and PROTECTIVE LIFE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> MARQUITTA MEADE, *et al.*, <br><br> Defendants. | ))))))))))))))) CAUSE NO. 4:22-CV-27-PPS-JEM |

## OPINION AND ORDER

This unfortunate case is centered around siblings who dispute the disbursement of proceeds from their mother's life insurance policy. Interpleader Plaintiffs, Lincoln Life, are in the center of the dispute holding the funds and they just want out of the case. As such, it has filed an amended motion for interpleader [DE 38] asking the Court to allow them to deposit the insurance proceeds at issue into the Court's registry and discharge them from any further liability relating to the insurance policy. Because I find all of the requirements of interpleader have been met, I will grant the Interpleader Plaintiffs' motion.

**Background**

On June 13, 2005, Liberty Life[1] issued a life insurance policy to Martha M. Meade (the mother) in this case in the amount of $139,980.00. [Compl., DE 2, ¶ 12; Policy No. 75561245NU3.] According to the complaint "[i]n the application that was incorporated as part of the Policy, Marquitta Meade, Lance Meade, and Lesley Meade [three out of her five children] were designated as the Policy's beneficiaries." [*Id.* ¶ 12.] Plus, the annual reports that were sent to Mrs. Meade for years (2006-2017 to be exact), indicate that the Policy's designated beneficiaries were Marquitta Meade, Lance Meade, and Lesley Meade. [DE 38-1 at 2-24.] On November 3, 2017, Mrs. Meade changed the policy beneficiary to her Estate. [Compl. ¶ 13.] The heirs of the estate are the five children (in equal shares).

One of the siblings, Marquitta Meade, has a theory about all of this. She believes the original insurance policy had all five siblings as the beneficiaries (and claims she spoke to an insurance representative on the phone who assured her this was correct, but only three names could fit in the beneficiary designation form mailed out for years), and that her brother, Lesley (who is also an attorney), basically ushered their mother back to his house in Indiana after the mother had a stroke, and forced her to sign a change of beneficiary on the life insurance account, making her change the beneficiary to the Estate. [DE 43 at 1-4.]

---

[1] More fully: Lincoln Life Assurance Company of Boston f/k/a Liberty Life Assurance Company of Boston and Protective Life Insurance Company.

Getting back to the hard facts of this case, as of September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston, and the Policy was assigned a new policy number (No. CP6077156.) [Compl. ¶ 14.] Also effective September 1, 2019, Protective became the administrator of the Policy. [*Id.* ¶ 15.]

A few years after the change of beneficiary, Mrs. Meade died on October 27, 2020. [*Id.* ¶ 16.] A couple months later, Lincoln Life received an e-mail from defendant, Marquitta Meade, advising: "I am hereby submitting a claim that an error exists in my mother's life insurance policy and I am requesting that the benefit NOT be paid to her estate . . . My mother wanted the death benefit to go directly to each of the five siblings and <u>never</u> go through the Estate." [*Id.* ¶ 17 (emphasis in original).] Marquitta Meade then sent them another e-mail about a month later advising "I want to challenge [payment of the proceeds to the Estate], legally, before any check is written." [*Id.* ¶ 19.]

However, the other siblings disagreed with Marquitta's position. For example, Laurence Meade and Millicent Meade stated in their answers that they "request[] that the proceeds of the life insurance policy that is the subject of this litigation be paid to the Estate of Martha M. Meade, which is the proper beneficiary of said policy proceeds being the last beneficiary designated by my mother." [DE 50 at 1; DE 51 at 1.] Lesley Meade, who is an attorney himself and the executor of the Estate, also requested that the life insurance proceeds be deposited into the registry of the Court. [DE 28 at 5.]

Lincoln Life sent correspondence to all five siblings telling them about the challenge to the Policy beneficiary designation, and providing them a 30-day courtesy period within which to explore resolution of their dispute. [Compl. ¶ 20.] They also told the siblings if they couldn't reach an agreement, they would refer the matter to their legal department for a potential interpleader. *Id.* As a result, Lincoln Life filed this lawsuit on April 14, 2022, against the five siblings and the Estate of Martha Meade. [*Id.* ¶ 22.] To date, no interpleader defendant has asserted a counterclaim against Lincoln Life.

On August 25, 2022, Lincoln Life filed what shows up on the docket as a motion to amend their motion for interpleader, but it is really an amended motion for interpleader of proceeds, and discharge and dismissal with prejudice. [DE 38.] The Estate of Martha Meade filed a response to the motion for interpleader, stating it had no objection to the discharge and dismissal of Lincoln Life upon payment of the proceeds into the Court, and is unaware of any malfeasance by Lincoln Life stating that the annual reports of the Policy appear to be in order. [DE 63 at 2.]

The parties have discussed a potential resolution to this case at length, trying to decide amongst themselves if the proceeds should go directly to all five siblings in equal portions, or go through the Estate (which, again, the heirs are the five siblings). In other words, everyone seems to agree that the proceeds should be divided equally among the siblings, but the only question is whether the money should go directly to them or be funneled through the Estate first.

Extensive settlement discussions followed Lincoln Life's amended motion, and, as a result, I put on hold ruling on the motion. [DE 53, 60, 78, 80, 83.] Unfortunately, the siblings have been unable to arrive at an agreement to resolve the matter. Consequently, on March 13, 2023, Judge Martin had a telephonic conference with the parties and was advised that the offers and counteroffers to settle were rejected, and the parties now request rulings on all pending motions. [DE 82.] Therefore, it is proper to rule on the motion for interpleader.

## Discussion

It is common for insurance companies, like the Interpleader Plaintiffs in this case, to file an interpleader action for protection against problems posed by multiple claimants to a single fund. *See Commercial Union Ins. Co. of New York v. Adams*, 231 F.Supp. 860, 867 (S.D. Ind. 1964). Interpleader enables "a neutral stakeholder, usually an insurance company or a bank, to shield itself from liability for paying over the stake to the wrong party. This is done by forcing all the claimants to litigate their claims in a single action brought by the stakeholder." *Indianapolis Colts v. Mayor and City Council of Baltimore*, 733 F.2d 484, 486 (7th Cir. 1984).

This equitable remedy of interpleader is codified in both statutory and rule form. *See* 28 U.S.C. § 1335; Fed. R. Civ. P. 22. The main distinction between these two are the jurisdictional prerequisites. Statutory interpleader under section 1335 requires only "minimal diversity" between two or more adverse claimants; as opposed to Rule 22 which is commonly referred to as "rule interpleader" which is maintained only if there

5

is a federal question raised by the pleadings or complete diversity of citizenship. *Thrivent Fin. for Lutherans v. DeWilde*, No. 20-cv-00956-DWD, 2021 WL 7907674, at *1 (S.D. Ill. June 2, 2021).  Here, Interpleader Plaintiffs have alleged subject matter jurisdiction pursuant to section 1335.  [Compl. ¶ 9.]

Usually, an interpleader action proceeds in two stages.  *Midland Nat'l Life Ins. Co. v. Agnew*, No. 2:10-cv-247-PPS-PRC, 2011 WL 2692961, at *2 (N.D. Ind. July 11, 2011) (citation omitted).  During the first stage, the court determines whether interpleader is appropriate by assessing whether the court has jurisdiction over the action, and whether the stakeholder is actually threatened with multiple liability.  *Aaron v. Mahl*, 550 F.3d 659, 665 (7th Cir. 2008).  During the second stage, the merits of the claims are resolved.  *Id.*

Under the federal interpleader statute, 28 U.S.C. § 1335, federal courts have original jurisdiction over interpleader when: (1) the amount in controversy is $500 or more; (2) the case involves two or more adverse claimants of diverse citizenship; and (3) the plaintiff has deposited the money or property subject to dispute into the registry of the court.  28 U.S.C. § 1335.  The jurisdictional requirements of section 1335 are satisfied in this case.  First, the disputed Policy proceeds exceed $500 [Compl. ¶ 12]; second, the Interpleader Defendants have presented adverse claims to the proceeds [Compl. ¶¶ 17-21; Marquitta Meade Answ., DE 8 ¶¶ 12-22; Lesley Meade Answ., DE 28 ¶¶ 6-13] and

minimal diversity exists between the adverse claimants[2] [Compl. ¶¶ 1-8]; and third, the Interpleader Plaintiffs are asking as relief to deposit the Policy proceeds into the Registry of the Court. [Compl. ¶ 27.]  All of the siblings have filed answers [Marquitta: DE 8; Lesley: DE 28; Laurence: DE 50;  Millicent: DE 51; and Lance: DE 59]; therefore, they have waived any objection to the Court's personal jurisdiction.  Fed. R. Civ. P. 12(h)(1).  I also note that no defendant has filed a counterclaim in this case.

Section 2361 governs the process and procedure of interpleader and grants "the district court in which an interpleader action is pending the authority to restrain all claimants from 'instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action.'"  *USAA Life Ins. Co. v. Brunton*, No. 1:16-cv-00282-JMS-KDL, 2016 WL 2910122, at *5 (S.D. Ind. May 19, 2016) (quoting 28 U.S.C. § 2361); *see also Primerica Life Ins. Co. v. Castro*, No. 2:14-CV-314, 2015 WL 4724910, at *3 (N.D. Ind. Aug. 10, 2015) (citation omitted) ("[I]t is of course essential that the interpleader court enjoin the institution or prosecution of other suits on the same subject matter elsewhere."); *Aaron v. Merrill*

---

[2] Section 1335 requires only minimal diversity, or diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967).  Minimal diversity exists here:  Lincoln Life is a corporation incorporated under the laws of New Hampshire, with its principal place of business in Pennsylvania; Protective is a corporation organized under the laws of Tennessee with its principal place of business in Alabama; Marquitta Meade is a citizen of Georgia; Lesley Meade is a citizen of Indiana; Laurence Meade is a citizen of Wisconsin; Lance Meade is a citizen of California; Millicent Meade is a citizen of California; and the Estate of Martha M. Meade is a citizen of Indiana. [Compl. ¶¶ 1-8.]

*Lynch, Pierce, Fenner & Smith*, 502 F.Supp.2d 804, 810 (N.D. Ind. 2007) (granting injunction after finding the party "has sufficiently demonstrated the prerequisites to statutory interpleader").

Also, "in an action in which the stakeholder does not assert a claim to the disputed fund, the stakeholder may be discharged from the litigation once the fund is deposited with the court – leaving the adverse claimants to litigate their dispute amongst themselves." *Prudential Ins. Co. of Am. v. Barker*, No. 4:18-cv-76, 2020 WL 108661, at *3 (N.D. Ind. Jan. 9, 2020); *see also Commercial Nat'l Bank of Chicago v. Demos*, 18 F.3d 485, 487 (7th Cir. 1994) (quotation omitted) (action for interpleader allows stakeholder "who has no claim to the money in the accounts and is willing to release it to the rightful claimant, to put the money . . . in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court.").

This brings me to the next step, considering whether the Interpleader Plaintiffs are entitled to interpleader relief and dismissal from this case. "Interpleader is justified only when the stakeholder has a real and reasonable fear of double liability or conflicting claims." *Mahl*, 550 F.3d at 663 (citation omitted). Moreover, "[a] court isn't required to assess the merits of the competing claim in determining whether interpleader is appropriate because the stakeholder should not be obliged at its peril to determine which [claimant] has the better claim."). *USAA Life Ins. Co. v. Cyranek*, No.

8

4:19-cv-00279-SEB-DML, 2020 WL 3445757, at *3 (S.D. Ind. June 23, 2020) (citation omitted).

In this case, the Interpleader Defendants have asserted adverse claims to the Policy proceeds held by the Interpleader Plaintiffs. In particular, Marquitta Meade has contested the designation of beneficiary as the Estate, and threatened to take legal action if the Interpleader Plaintiffs distributed the Policy proceeds to the Estate. Conversely, the other siblings that have weighed in have stated their belief that the proceeds should go to the Estate.

The fact that Marquitta Meade has alleged that Interpleader Plaintiffs somehow acted improperly in this case with regard to the original Policy is unsupported, and frankly, irrelevant since Mrs. Meade later changed the beneficiary of the proceeds to her Estate. To the extent Marquitta alleges that the initial Policy beneficiaries were really all five siblings (instead of the three siblings that appeared on the face of the statements), this is really tangential to any controversy. No one disputes that the 2017 beneficiary designation named the Estate as the Policy beneficiary. This update in beneficiary designations really casts into the shadows any dispute about who the original Policy beneficiaries really were. Marquitta makes further accusations, including that the Interpleader Plaintiffs breached a fiduciary duty to her by failing to maintain an original copy of the Policy, that they somehow altered or failed to properly document the Policy's original beneficiaries, and that they have unreasonably delayed the litigation. [DE 43 at 2-5.] However, there is no evidentiary support for these

9

allegations, Marquitta Meade has not alleged any counterclaims against the Interpleader Plaintiffs, she has not provided any case law that interpleader is inappropriate under the circumstances, and again, these allegations are all extraneous to the 2017 beneficiary change naming the Estate as the Policy beneficiary.

In sum, the Interpleader Plaintiffs have met the requirements of interpleader, and there is no evidence to support any misconduct on their part. As such, interpleader is appropriate.

One final note. In the complaint, the Interpleader Plaintiffs requested reimbursement of costs and attorneys fees that they were allegedly compelled to expend in the prosecution of this lawsuit. [Compl. at 6.] However, in the motion seeking interpleader, the Interpleader Plaintiffs do not mention (and certainly don't go one step further and request) attorneys fees. Although this issue is not directly before me since Interpleader Plaintiffs don't directly request attorney fees in their motion, I note that an award of attorneys fees to the interpleading party is a matter within the Court's discretion. 28 U.S.C. § 2361 (giving the district court the authority to "make all appropriate orders to enforce its judgment"). In this case, awarding attorneys fees would substantially diminish the value of the death benefits. I note my typical stance in cases like this, which is that fees in this type of relatively minor matter are best construed simply as part of Plaintiffs' cost of doing business. *See Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965) (Friendly, J) ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies,

10

insurers may, as a matter of course, transfer a part of their ordinary cost of doing business [to the claimants] by bringing an action for interpleader.").

## Conclusion

For the aforementioned reasons, the Court GRANTS Interpleader Plaintiffs' motion for interpleader [DE 38]. Marquitta Meade's Motion to Deny Interpleader [DE 43] is DENIED.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED** that:

1. Interpleader Plaintiffs are mere stakeholders with no interest in the controversy between Defendants and make no claim to the life insurance Policy benefits. Interpleader Plaintiffs are hereby granted leave to deposit with the Clerk of this Court the admitted, full, and total liability under the Policy in the amount of $139,980.00. That sum will be held by the Clerk subject to further order of this Court.

2. Interpleader Plaintiffs are discharged of any and all of its liability under the aforesaid Policy. Neither Interpleader Defendants, nor anyone else acting directly or indirectly on their behalf, may institute or maintain any action against the Interpleader Plaintiffs relative to the insurance Policy at issue.

**IT IS FURTHER ORDERED** that Interpleader Plaintiffs are DISMISSED WITH PREJUDICE and Defendants (or anyone else acting directly or indirectly on their behalf) are enjoined from making any further claims for benefits against Interpleader Plaintiffs or the Policy and from instituting or maintaining any action against the Interpleader Plaintiffs relative to the insurance Policy at issue.

**IT IS FURTHER ORDERED** that there is no just reason for delay and this Court expressly directs the entry of final judgment as it relates to the claims by and against Interpleader Plaintiffs.

**SO ORDERED**.

ENTERED: March 20, 2023

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT