UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| LINCOLN LIFE ASSURANCE COMPANY OF BOSTON f/k/a LIBERTY LIFE ASSURANCE COMPANY OF BOSTON and PROTECTIVE LIFE INSURANCE COMPANY, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CAUSE NO. 4:22-CV-27-PPS-JEM ) |
| MARQUITTA MEADE, *et al.*, | ) ) |
| Defendants. | ) |

# AMENDED OPINION AND ORDER[1]

This unfortunate and unnecessary sibling dispute involves how proceeds from a life insurance policy should be disbursed. The case started as an interpleader matter but the insurance company that brought the action was dismissed months ago. What is left is a dispute among five siblings about how the proceeds from the life insurance policy (which presently reside in the Clerk of Court's account) should be distributed. One of the siblings firmly believes it should be paid equally to all five directly. The other four seem to either just want to be paid, or believe that, consistent with their mother's wishes, it should be paid to the Estate (which in turn designates the five

---

[1] This amended order simply clarifies in the conclusion that the amount of money that the Clerk of Court has been holding and is now payable to the Estate of Martha M. Meade is $139,980.00 "plus interest" since it has been held in an interest bearing account.

siblings as equal beneficiaries).  Let's be honest, it seems rather petty to be arguing over which of two nearly identical choices is correct, yet here we are.

After multiple failed settlement attempts, Defendant Lesley Meade filed for summary judgment.  Only his sister, Marquitta Meade, filed a memorandum in opposition to the motion.  (The other three siblings are apparently either fed up with the fight or agree with Lesley.)  There is no genuine issue of material fact.  It is plain from the designation of beneficiary form signed by Martha Meade (the mother) that she intended the life insurance proceeds to be paid to her Estate.  Therefore, summary judgment is warranted and the life insurance proceeds will be paid accordingly.

## Background

On June 13, 2005, Liberty Life[2] issued a life insurance policy to Martha Meade in this case in the amount of $139,980.00. [Compl., DE 2, ¶ 12; Policy No. 75561245NU3; DE 94-1 at 2, 5.]  According to the interpleader complaint filed by Liberty Life, "[i]n the application that was incorporated as part of the Policy, Marquitta Meade, Lance Meade, and Lesley Meade [three out of her five children] were designated as the Policy's beneficiaries." [DE 2 at ¶ 12.]  The annual reports that were sent to Mrs. Meade for years

---

[2] More fully: Lincoln Life Assurance Company of Boston f/k/a Liberty Life Assurance Company of Boston and Protective Life Insurance Company.  Also, as of September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston.  [Compl. ¶ 14.] Effective September 1, 2019, Protective became the administrator of the Policy. [*Id.* ¶ 15.]

2

(2006-2017), indeed indicate that the Policy's designated beneficiaries were Marquitta Meade, Lance Meade, and Lesley Meade. [DE 38-1 at 2-24; DE 94-1 at 5.]

According to the affidavit of Lesley Meade (executor of the Estate and an attorney representing himself in this matter), after his mother moved in with him in Indiana in 2017, he showed her a copy of the annual report certificate sent by Liberty Life (showing only three of the five children were named as beneficiaries), and his mother explained that she wanted the life insurance proceeds to go to all five children in equal shares. [DE 94-1 at 2.] Lesley called Liberty Life, and the representative confirmed that only three children were designated as beneficiaries. *Id.* Although the mother's original intention was to list each of the five children as beneficiaries, because the change of beneficiary form asked for Social Security numbers for each beneficiary, and Mrs. Meade did not have the social security number for Millicent (who had become estranged from the family more than ten years earlier), Lesley explained to his mother that she could name the Estate as the beneficiary instead and achieve a similar result. [*Id*. at 3.] They discussed this option, Lesley answered his mother's questions, she approved of the plan and had Lesley fill out the Beneficiary Change Request form, and his mother signed it. *Id.*

On October 25, 2017, Lesley sent the signed Beneficiary Change Request form to Liberty Life. [*Id.* at 3, 6-7.] On November 3, 2017, the mother received a letter from insurance company confirming the processing of her request to change the beneficiary

3

designation of her life insurance policy from three of her kids (Marquitta, Lance and Lesley) to her Estate. [*Id.* at 3-4, 9.]

Lesley Meade now seeks summary judgment that the life insurance proceeds should be payable to the Estate, consistent with his mom's wishes as stated in the designation of beneficiary form that she executed. The only sibling to file a response to the motion for summary judgment, Marquitta Meade, has a theory about all of this. She believes the original insurance policy had all five siblings as the beneficiaries, and this was her mother's wish. Marquitta's affidavit states that when the policy arrived with only three names designated as beneficiaries, her mother asked her to call Liberty Life, and when she did, the agent informed her "the form doesn't have room to include any more than three names, but Millicent Meade and Laurence Meade were included." [DE 107-1 at 4.] Marquitta believes Liberty Life committed some kind of fraud or malfeasance with the original policy. She also believes her brother, Lesley, was up to no good. Marquitta contends Lesley basically ushered their mother away from Marquitta's home in Colorado, back to his home in Indiana after the mother had a stroke, and rapidly forced her to sign a change of beneficiary on the life insurance account, making her change the beneficiary to the Estate. [DE 43 at 1-4; DE 107-1 at 5.] According to Marquitta, Lesley never asked her for Millicent's social security number, and he should have been able to figure it out. [DE 107-1 at 4-5.] The problem with this theory, as discussed in detail below, is that it is just that — a theory. No evidence supports it.

4

Anyway, a few years after the change of beneficiary, Mrs. Meade died on October 27, 2020. [DE 2 ¶ 16.] Later, Liberty Life received an e-mail from Marquitta, advising: "I am hereby submitting a claim that an error exists in my mother's life insurance policy and I am requesting that the benefit NOT be paid to her estate . . . My mother wanted the death benefit to go directly to each of the five siblings and never go through the Estate." [*Id.* ¶ 17 (emphasis in original).] Marquitta Meade then sent them another e-mail about a month later advising "I want to challenge [payment of the proceeds to the Estate], legally, before any check is written." [*Id.* ¶ 19.] Some of the other siblings disagreed with Marquitta's position. Liberty Life claims it sent correspondence to all five siblings telling them about the challenge to the Policy beneficiary designation, and providing them a 30-day courtesy period within which to explore resolution of their dispute.[3] [*Id.* ¶ 20.] It also told the siblings if they couldn't reach an agreement, they would refer the matter to their legal department for the filing of an interpleader action. *Id.* A short while later, Liberty Life filed this lawsuit against the five siblings and the Estate of Martha Meade. [*Id.* ¶ 22.]

On August 25, 2022, Liberty Life filed an amended motion for interpleader of proceeds, and discharge and dismissal with prejudice. [DE 38.] The Estate of Martha Meade filed a response to the motion for interpleader, announcing it had no objection to the discharge and dismissal of Liberty Life upon payment of the proceeds into the

---

[3] Marquitta insists she has no memory of receiving the 30-day warning letter. [DE 107 at 6.]

Court, and was unaware of any malfeasance by Liberty Life stating that the annual reports of the Policy appear to be in order. [DE 63 at 2.] On March 20, 2023, I entered an order granting Liberty Life's interpleader, and it deposited the total liability under the Policy in the amount of $139,980 with the Clerk of Court. [DE 84 at 11.] Additionally, Liberty Life was discharged from any liability under the policy.

Lesley Meade then filed a motion for summary judgment, asking me to find as a matter of law, that the life insurance proceeds should be paid out to the Estate. [DE 94.] He also provided an appropriate notice to the pro se defendants that he filed a summary judgment motion. [DE 97.]

## Discussion

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A motion for summary judgment has been described as the time in a lawsuit to "put up or shut up." *Grant v. Trustees of Indiana University*, 870 F.3d 562, 568 (7th Cir. 2017). The interpretation of an insurance policy is a question of law that is an appropriate subject for disposition by summary judgment. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact

6

exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of *some* alleged factual dispute between the parties," *id.* at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Not every factual dispute between the parties makes summary judgment inappropriate. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. That is the key in this case—although Marquitta tries to throw up lots of disputes of facts (did Lesley steal her mother away, did the insurance company originally have the wrong beneficiaries, did the insurance company provide all of the documents in its possession or is it hiding documents?) none of these things affect the outcome of the lawsuit. I already granted Liberty Life's motion for interpleader and Marquitta's motion to reconsider that order. [DE 84, 90.] At this point, the life insurance proceeds are sitting with the Clerk of Court, just waiting for my determination of whether the proceeds should be distributed to the Estate or directly to the five siblings. The only real issue in this case is who did Martha Meade designate as the beneficiary of the life insurance policy with Liberty Life that was in effect at the time she died?

Only Lesley has produced actual evidence of the beneficiary designation. He has attached as Exhibit C the executed Liberty Life Assurance Company Beneficiary Change Request Form dated October 25, 2017, designating the Estate of Martha Meade as the primary (100%) beneficiary of the life insurance proceeds at issue. [DE 94-1 at 6-7.] Also attached as an exhibit is an e-mail from Lesley Meade to an individual at Liberty Life, starting, "I cannot understand why there were only three beneficiaries listed on the policy. My mother has 5 children and she wishes to treat them all equally. Unfortunately, she does not have an address and Social Security number of each of us. That is the primary reason why naming her Estate as the beneficiary of her policy will achieve the desired result, all under Court supervision." [DE 94-1 at 8.] And finally, Lesley attached the confirmation from Liberty Life, stating it processed the request to change the beneficiary designation on the life insurance contract, effective November 3, 2017, to the Insured's Estate as the primary beneficiary. [DE 94-1 at 9.]

The general rule in Indiana is that a change of beneficiary must be exercised in the manner provided in the policy. *Hoess v. Continental Assurance Co.*, 164 N.E.2d 125, 129 (Ind. Ct. App. 1960). Here, there is no dispute that the change of beneficiary form was completed and the beneficiary of the life insurance proceeds was properly changed to the Estate.

To the extent Marquitta insinuates that her mother did not have the mental capacity to give Lesley power of attorney or authorize the beneficiary change, under Indiana law, a person has the mental capacity to enter into legally binding documents if

8

she was "able to understand in a reasonable manner the nature and effect of [her] act." *Nichols v. Estate of Tyler*, 910 N.E.2d 221, 227 (Ind. Ct. App. 2009) (quotation marks and citation omitted). For legally binding contracts, a person is "presumed to be of sound mind" and therefore have the requisite mental capacity. *In re Rhoades*, 993 N.E.2d 291, 299 (Ind. Ct. App. 2013). The law also presumes the competence of an adult to enter into a contract. *Zawistoski v. Gene B. Glick Co.*, 727 N.E.2d 790, 794 (Ind. Ct. App. 2000). To rebut the presumption of competence, Marquitta would have to identify evidence from which a reasonable jury could determine that when she signed the beneficiary change form or gave Lesley power of attorney, her mother was not capable of understanding she was changing the beneficiaries from three of her children, to her Estate. But Marquitta has produced no evidence of her mother's supposed inability to understand her actions.

Marquitta also argues the beneficiary change form is ineffectual because her mother was under the undue influence of Lesley. [DE 107 at 4.] But a presumption of undue influence only arises in a fiduciary or confidential relationship where the dominant party benefits from the transaction with the subordinate party. *See In re Guardianship of Knepper*, 856 N.E.2d 150, 154 (Ind. Ct. App. 2006); *In re Rhoades*, 993 N.E.2d at 301 n.8.

Recall that Lesley Meade was one of the three children named as a beneficiary of the original life insurance policy. [DE 94-1 at 5.] So if anything, he would be receiving a *smaller* portion of the life insurance proceeds when he helped his mother change the

9

beneficiary to the Estate (which would be distributed equally among all five children). If Lesley was such a schemer, as Marquitta claims, why would he *reduce* his take from 33% to 20%? None of this sensible. What's more, even if Marquitta's theory was somehow true that the original life insurance policy was issued with all five siblings as beneficiaries, Marquitta has not pointed out anything that Lesley Meade had to gain by changing the beneficiary to the Estate. Therefore, there is no evidence to support Marquitta's theory that her mother was improperly influenced by Lesley.

Because all of the material undisputed evidence in this case shows that Mrs. Meade properly changed the beneficiary of her life insurance policy to her Estate before she died, the only possible result is for me to order the money being held by the Clerk of Court to be distributed to the Estate.

## Conclusion

For the aforementioned reasons, Defendant Lesley Meade's Motion for Summary Judgment [DE 94] is GRANTED. The Clerk of Court is ORDERED to pay the $139,980.00 that it has been holding pursuant to the order dated March 20, 2023 [DE 84] plus interest to the Estate of Martha M. Meade. Additionally, Marquitta Meade's second Motion for Reconsideration [DE 111] is DENIED. Finally, the Clerk is ORDERED to CLOSE this case.

ENTERED: October 10, 2023

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT